Exhibit A



# CASE INFORMATION

**CV-20-931885 TORRE ROSSA, LLC vs. LIBERTY MUTUAL INSURANCE**

View Printer Friendly Version

Docket Information

| From Filing Date | Docket Type 1 | Docket Type 2 | Docket Type 3 | Docket Type 4 | Filter Results |
|---|---|---|---|---|---|
| __ / __ / ____ 🌐 | [SELECT] ▼ | [SELECT] ▼ | [SELECT] ▼ | [SELECT] ▼ | Start Search 🌐 |

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 04/29/2020 | N/A | SR | USPS RECEIPT NO. 41629078 DELIVERED BY USPS 04/22/2020 LIBERTY MUTUAL INSURANCE PROCESSED BY COC 04/29/2020. | |
| 04/29/2020 | N/A | SR | USPS RECEIPT NO. 41629077 DELIVERED BY USPS 04/22/2020 LIBERTY MUTUAL INSURANCE PROCESSED BY COC 04/29/2020. | |
| 04/16/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 04/16/2020 | D1 | CS | WRIT FEE | |
| 04/16/2020 | D1 | SR | SUMS COMPLAINT(41629078) SENT BY CERTIFIED MAIL. TO: LIBERTY MUTUAL INSURANCE 175 BERKLEY STREET BOSTON, MA 02116 | 📄 |
| 04/16/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 04/16/2020 | D1 | CS | WRIT FEE | |
| 04/16/2020 | D1 | SR | SUMS COMPLAINT(41629077) SENT BY CERTIFIED MAIL. TO: LIBERTY MUTUAL INSURANCE CORPORATION SERVICE COMPANY 50 WEST BROAD | 📄 |

| | | | | |
|---|---|---|---|---|
| | | | STREET SUITE 1330 COLUMBUS, OH 43215-0000 | |
| 04/15/2020 | N/A | SF | JUDGE JOHN J RUSSO ASSIGNED (RANDOM) | |
| 04/15/2020 | P1 | SF | LEGAL RESEARCH | |
| 04/15/2020 | P1 | SF | LEGAL NEWS | |
| 04/15/2020 | P1 | SF | LEGAL AID | |
| 04/15/2020 | P1 | SF | COURT SPECIAL PROJECTS FUND | |
| 04/15/2020 | P1 | SF | COMPUTER FEE | |
| 04/15/2020 | P1 | SF | CLERK'S FEE | |
| 04/15/2020 | P1 | SF | DEPOSIT AMOUNT PAID THOMAS J CONNICK | |
| 04/15/2020 | N/A | SF | CASE FILED: COMPLAINT | 📄 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.
Website Questions or Comments.
Copyright © 2020 PROWARE. All Rights Reserved. 1.1.235



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**April 15, 2020 12:28**

By: THOMAS J. CONNICK 0070527

Confirmation Nbr. 1984991

| | |
|---|---|
| TORRE ROSSA, LLC | CV 20 931885 |
| vs. | |
| LIBERTY MUTUAL INSURANCE | **Judge:**  JOHN J. RUSSO |

**Pages Filed:**  20

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | | |
|---|---|---|
| **TORRE ROSSA LLC** | ) | **CASE NO.** |
| **3355 Richmond Rd., #250** | ) | |
| **Beachwood, OH 44122** | ) | **JUDGE:** |
| On behalf of itself and all those similarly | ) | |
| situated businesses and entities | ) | **PLAINTIFF'S CLASS ACTION** |
| | ) | **COMPLAINT** |
| | ) | |
| **Plaintiff** | ) | ***Jury Demand Endorsed Hereon*** |
| | ) | |
| **-vs-** | ) | |
| | ) | |
| **LIBERTY MUTUAL INSURANCE** | ) | |
| **175 Berkley Street** | ) | |
| **Boston, MA  02116** | ) | |
| | ) | |
| <u>**ALSO SERVE:**</u> | ) | |
| **CORPORATION SERVICE** | ) | |
| **COMPANY** | ) | |
| **50 West Broad Street, Suite 1330** | ) | |
| **Columbus, OH 43215** | ) | |
| | ) | |
| **Defendant** | ) | |

Now comes Plaintiff, Torre Rossa LLC ("Rossa" or "Plaintiff"), by and through its undersigned counsel, for its Class Action Complaint against Defendant Liberty Mutual Insurance ("Liberty" or "Defendant"), and as grounds therefore allege as follows:

**<u>THE PARTIES</u>**

1.      Rossa is a Limited Liability Company under Ohio law with its principal place of business located at 3355 Richmond Rd., #250, Beachwood, Ohio 44122.  Rossa operates a restaurant at said Beachwood location in Cuyahoga County, Ohio.

2.      Liberty is the fifth largest global property and casualty insurer, with its principal place of business in Boston, Massachusetts and sells insurance in Ohio. It is an insurance company authorized to do business in the State of Ohio and elsewhere.

## JURISDICTION AND VENUE

3.      This Honorable Court has jurisdiction over the parties and this dispute, including for declaratory relief, pursuant to Ohio Revised Code § 2307.382, *et seq*., Ohio Revised Code § 2721.02, *et seq.* and Rule 57 of the Ohio Rules of Civil Procedure.

4.      An actual controversy between Rossa and Liberty exists within the meaning of Ohio Revised Code § 2721.02, *et seq.* regarding whether Liberty has a duty to provide Rossa coverage and indemnity for, among other things, business income loss pursuant to the terms and conditions of the Liberty policy of insurance, due to the COVID-19 pandemic, as more particularly described below.

5.      The Ohio General Assembly specifically provided in Ohio Revised Code §2721.14 that "*Sections 2721.01 to 2721.15, inclusive, of the Revised Code shall be so interpreted and construed as to effectuate their general purpose to make the law of this state uniform with the law of those states which enact similar sections\*\*\*.*"

6.      Venue is proper in Cuyahoga County, Ohio under Ohio Rules of Civil Procedure 3(C)(3), 3(C)(6), and 3(F), and Ohio Revised Code § 2721.14 because Defendant conducted activity giving rise to Plaintiff's Claims for relief in Cuyahoga County, because all or part of Plaintiff's claims for relief arose in Cuyahoga County, and because the declaratory relief requested herein is uniform with the laws of those states that enacted similar provisions, and wherein some Class Members reside.

## FACTUAL BACKGROUND

### *THE INSURANCE CONTRACT*

7.      At all relevant times, Liberty insured Rossa under a commercial business owner policy, bearing policy, number BKS58600565 ("Policy"). The certified Policy is in the possession

of Liberty, and while not attached hereto because it is voluminous, it is incorporated herein by reference.

8. Under the Policy, Plaintiff agreed to make premium payments to Liberty in exchange for Liberty's promise to indemnify Plaintiff for losses including, but not limited to, business income loss at its commercial property location ("Property").

9. The Policy is currently in full effect, providing property, business personal property, business income and extra expense, and additional coverages for the effective period, which includes January 1, 2020 to the present.

10. Plaintiff faithfully paid policy premiums to Liberty, specifically to provide additional coverage for "Business Income and Extra Expense Coverage" in the event of business closures by order of Civil Authority.

11. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Property is specifically prohibited by order of Civil Authority as the direct result of a covered loss to property in the immediate area of Plaintiff's Property. The covered physical loss includes, without limitation, loss of use.

12. COVID-19's actual or suspected physical presence at or in the vicinity of Plaintiff's Property prevents Plaintiff from making full use of the Property, especially in cases where the business must close in part or in full. Under the terms and condition of the Policy, this kind of loss constitutes a physical loss to the Property in that there has been a loss of use of the Property. Moreover, the COVID-19 virus is a "physical" thing, not an abstract fear. For example, a restaurant, such as Plaintiff, forced to close due to COVID-19 in or near the restaurant has suffered a "physical loss" of use of its Property, with resulting business interruption loss.

13.     Under the terms and conditions of the subject Policy Physical loss does not mean and/or require tangible "physical damage."

14.     The Policy is an "all-risk" policy, in so far as it provides that a covered cause of loss under the policy means direct physical loss of or damage to the property unless the loss is specifically excluded or limited in the Policy. Here, no specific exclusion applies to reasonably justify the denial of Plaintiff's claims.

15.     Based upon information and belief, Liberty has accepted the policy premiums with no intention of providing any coverage under the Policy's Business Income, Extra-Expense or Civil Authority Coverage Sections due to a loss and/or shutdown from a pandemic, i.e. the COVID-19 pandemic.

### *THE COVID-19 PANDEMIC*

16.     The global COVID-19 pandemic has physically impacted both public and private property and physical spaces around the world, as well as the right of the general public to gather and utilize retail business locations. The currently-raging pandemic has been exacerbated by the fact that the deadly COVID-19 physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight days. The scientific community in the United States and indeed, across the world, including the World Health Organization ("WHO"), has recognized that COVID-19 is a cause of real physical loss and damage.

17.     Indeed, a number of countries such as: China, Italy, France, and Spain have required the fumigation of public areas prior to allowing them to re-open. A recent scientific study printed in the New England Journal of Medicine explains that the virus is detectable for up to three hours in aerosols, up to four hours on copper, up to 24 hours on cardboard boxes, and up to three days

on plastic and stainless steel[1]. Notably, the most potent form of the virus is not airborne but rather present on physical surfaces.

18.     While the Policy was in force, Rossa sustained a loss due to coronavirus, also referred to as "COVID-19", and the Civil Authority orders issued by the Governor of Ohio that have addressed the state and nationwide spread of the coronavirus, i.e. pandemic.

19.     In late 2019 and early 2020, an outbreak of respiratory illness caused by a novel COVID-19 started to infect humans across the globe. On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a pandemic (i.e. a global outbreak of disease).

20.     On January 31, 2020, under §319 of the Public Health Service Act (42 U.S.C.247d), The Secretary of Health and Human Services ("HHS") declared a public health emergency in response to COVID-19.

21.     On March 11, 2020, the WHO announced that COVID-19 outbreak represented a pandemic.

22.     On March 13, 2020 the President of the United States of America, Donald J. Trump, issued the Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak ("Proclamation"), proclaiming the COVID-19 outbreak constituted a national emergency in the United States, beginning March 1, 2020.

23.     Various states, including the State of Ohio have issued and implemented mandatory Stay-At-Home Orders,.[2] Requiring business, such as Plaintiff, to shut down, thus suffering a loss of use of their Properties, and resulting in substantial loss of business income.

---

[1] See Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1, New England Journal of Medicine (March 17, 2020), available at https://www.nejm.org/doi/pdf/10.1056/NEJMc 2004973?articleTools=true.
[2] Upon information and belief, all but nine (9) states have ordered and are currently under mandatory stay-at-home orders.

Electronically Filed 04/15/2020 12:28 /  / CV 20 931885 / Confirmation Nbr. 1984991 / CLLMD

24.     On March 29, 2020 President Donald J. Trump announced the extension of his Administration's social distancing guidelines until April 30, 2020.

25.     On March 15, 2020, Ohio, like the majority of other states, restricted food and beverage sales to carry-out and delivery only, with no onsite consumption permitted.  The stated goal of this order was to slow the pandemic by minimizing in-person interaction "in an environment with a multitude of hard surfaces."  The order reiterated that "It may be possible that individuals can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, noise or eyes."  Also that:

> Previously studied human coronaviruses (including SARS, which is very closely related to COVID-19) can survive on paper, wood, glass, plastic up to 4-5 days. *Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents.*  The Journal of Hospital Infection, March 2020, Volume 104, Issue 3, Pages 246-251.

26.     Effective March 23rd, 2020, Ohio Civil Authority ordered Ohio residents to stay at home and ordered all non-essential businesses in Ohio to cease all activities.  Rossa does not qualify as an Essential Business, and so had to cease retail operations.

27.     Coronavirus and the pandemic cause direct physical loss and property damages.  COVID-19 and the Pandemic are physically impacting public and private property in Ohio and throughout the country.  The executive orders issued by the Governor of Ohio, and the majority of other State Governors, in response to the pandemic have caused direct physical loss of Rossa's and Class Members' properties.

28.     After Rossa ceased operations and shut its business by order of the State of Ohio and Cuyahoga County, it made a claim with Liberty under the Policy's commercial/business income coverage. Liberty acknowledged the claim, assigned it claim number 23793029. And subsequently denied the Claim by letter dated April 2, 2020.

6

29.     As of April 15, 2020, Ohio had 7,153 confirmed cases of coronavirus.  Cuyahoga County has more coronavirus cases than any other county in the state – a total of 1,239. Coronavirus has killed at least 309 people in Ohio as of the date of this filing; at least 33 from Cuyahoga County.

30.     Based on the prevalence of the virus in Cuyahoga County, it is probable that Rossa sustained direct physical loss of or damage due to the presence of coronavirus, and has unquestionably sustained direct physical loss as the result of the pandemic and/or civil authority orders issued by the Governor of Ohio.

31.     Any effort by Liberty to deny the reality that the Coronavirus causes physical loss of or damage to property would constitute a false and potentially fraudulent misrepresentation that could endanger policyholders, such as Plaintiff, and the public.

32.     Nonetheless, on April 2, 2020 Liberty wrongfully denied Plaintiff's Claim(s) for business income loss, extra expense, and civil authority coverage.

33.     On at least one occasion prior to the COVID-19 pandemic, Liberty used exclusionary language that specifically excluded loss or damage as a result of a pandemic.

34.     In *Meyer Natural Foods, LLC v. Liberty Mutual Fire Insurance Company*[3], 218 F.Supp.3d 1034 | 96 Fed.R.Serv.3d 206, Liberty denied coverage based on the following exclusion:

> "We will not pay for loss or damage caused by or resulting from any of the following, regardless of any other cause or event, including a peril insured against, that contribute to the loss at the same time or in any other sequence:
>
> 10.     The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, ***pandemic***, influenza, plague, ***SARS***, or Avian Flu.[4]

---

[3] Liberty Mutual Fire Insurance Company is part of the Liberty Mutual Insurance group of companies.
[4] Emphasis added.

7

35. COVID-19 is a Severe Acute Respiratory Syndrome ("SARS"), and the WHO has officially named COVID-19 as SARS-CoV-2.

36. In this case, under the coverage forms at issue, Liberty based its denial on exclusions that are not applicable to a pandemic.

37. Had Liberty intended to exclude claims for the COVID-19 pandemic made under the subject Policy(s), it would have, and could have, included the express exclusionary language it has utilized in the past to deny claims, which specifically included the term "pandemic" and "SARS," but Liberty failed to do so related to the Plaintiff herein and Class Members.

38. Liberty knowingly, purposely and intentionally used inapplicable exclusions to deny claims for Business Interruption, Extra Expense and Civil Authority claims related to the COVID-19 pandemic.

39. Liberty had at its disposal contractual language that specifically excluded pandemics and SARS but did not include those policy exclusions in the subject Policy(s), yet wrongfully denied claims for those very reasons.

40. Liberty has actual knowledge of the different meanings between pandemic, SARS, Virus, Bacteria and Contamination, by way of its use of those terms in previous cases and policies utilizing those different terms, and wrongfully and intentionally used the terms "virus" and "bacteria," among others, to exclude Plaintiff's and Class Members' claims when, in fact, Plaintiff and Class Members' claims are, as admitted by Liberty, related to a pandemic – which is not expressly excluded in the subject policy(s).

41. Alternatively, the terms and conditions of coverage and exclusionary language relied upon by Liberty to deny Plaintiff and Class Members coverage under the Policy(s) related

8

to the COVID-19 pandemic are ambiguous and, therefore, must be construed strictly against Liberty and in favor of Plaintiff and the Class Members.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

43.     ***Class Definition(s)***: In accordance with Ohio Civ. R. Proc. 23, Plaintiff brings this action individually and on behalf of similarly situated persons and entities. In this action Plaintiff seeks certification of (1) a nationwide Declaratory Relief Class pursuant to Ohio Civ. R. Proc. 23(b)(2), (2) a nationwide Restitution/Monetary Relief Sub-Class pursuant to Ohio Civ. R. Proc. 23(b)(3), (3) an Ohio State Sub-Class for Insurance Bad Faith pursuant to Ohio Civ. R. Proc. 23(b)(3) and 23(c)(5). This Class and these Sub-Classes are defined as follows[5]:

   a.   ***Declaratory Relief Class (Count I)***: All individuals and entities throughout the United States who, from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Liberty and denied Business Income loss, Extra Expense and/or Civil Authority coverage due to COVID-19; and

   b.   ***Restitution/Monetary Relief Sub-Class (Counts I, II)***: All individuals and entities throughout the United States who from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Liberty and denied Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19; and;

---

[5] Alternatively, Plaintiff seeks class certification pursuant to Ohio Civ. R. Proc. 23(c)(4) for each Class.

9

c. ***Ohio State Bad Faith Sub-Class (Counts I, II and III)***: All individuals and entities throughout the State of Ohio who from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Liberty and denied, in bad faith, Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19.

44.     Excluded from the Class are Liberty's employees, officers, directors, legal representatives, successors, and assigns; any entity in which Liberty has a controlling interest; any Judge to whom the litigation is assigned; all members of the Judge's family; and all persons who timely and validly request exclusion from the Class. Plaintiff reserves the right to modify the Class Definition(s) throughout the course of this litigation to conform with the evidence and facts as they develop.

45.     This action has been brought as a class action, and may properly be maintained, pursuant to Ohio Civ. R. Proc. 23(b)(1), (2) and (3) of the Ohio Rules of Civil Procedure and case law thereunder and, alternatively Ohio Civ. R. Proc. 23(c)(4).

46.     ***Numerosity***: Plaintiffs do not know the exact number of the Members of the Class(es) because such information is in the exclusive control of Defendant. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class Members number at least in the many thousands and possibly millions and are sufficiently numerous and geographically dispersed throughout the United States of America, and State of Ohio, so that joinder of all Class Members is impracticable.

47.     ***Typicality***:    The Plaintiff's claims are typical of the Class Members' claims. Like other Class Members, Plaintiff is an insured of Liberty who purchased a Policy of Insurance and sought coverage and indemnification thereunder for Business Income loss, Extra Expense and

10

Civil Authority coverage due to the COVID-19 pandemic, and were summarily denied the requested coverage by Liberty under the same, or substantially same, coverage forms.

48.     ***Adequacy***:    Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff's  interests are aligned with the Class Members that Plaintiff seeks to represent, and Plaintiff has retained counsel experienced in complex class action litigation and insurance law, and who has previously been appointed lead and/or co-lead class action counsel in several previous class action matters. Plaintiff does not have any conflicts of interest with any Class Members that would impair or impede its ability to fully and adequately represent such Class Members.

49.     ***Commonality***:    Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members, including but not limited to:

  a.  Whether Liberty has systematically refused and/or failed to find coverage and indemnify for Business Income loss, Extra Expense, and Civil Authority due to the COVID-19 pandemic;

  b.  Whether Liberty systematically notified Plaintiff and Class Members by way of the denial letter substantially similar to the Form Denial Letter that Liberty would refuse on a prospective basis to provide coverage and pay benefits in the amounts of the policy(s) limit of liability for Business Income loss, Extra Expense, and Civil Authority, as defined in the policy, due to the COVID-19 pandemic;

  c.  Whether the Form Denial Letter was an anticipatory repudiation of certain obligations arising under the Policy for indemnification for business loss income;

  d.  Whether Liberty used inapplicable exclusions to deny coverage;

  e.  Whether the pandemic resulted in a physical loss under the Liberty Policy;

f.  Whether loss of use and/or utilization of Plaintiff's and Class Members' businesses is a direct physical loss under the Liberty Policy;

g.  Whether the relevant terms and conditions of the Liberty Policy are ambiguous;

h.  Whether Class Members are entitled to declaratory and/or injunctive relief requiring Liberty to honor claims for Business Income loss, Extra Expense, and Civil Authority due to the COVID-19 pandemic in an amount determined by the policy limits of liability for future claims;

i.  Whether Liberty breached its contract with Plaintiff and the Class Members;

j.  Whether Liberty breached the implied duty of good faith and fair dealing, thus damaging Plaintiff and Class Members;

k.  Whether, and to what extent, the conduct of Liberty caused injury to Plaintiff and Members of the Class, and, if so, the appropriate measure of damages.

l.  Whether Plaintiff and Class Members are entitled to injunctive and/or equitable relief as a result of Defendants' wrongful conduct;

m.  The proper form of equitable and injunctive relief;

n.  Whether liberty acted an engaged in bad faith as to the Ohio Sub-Class Members

50.  ***Risk of Inconsistent or Varying Adjudications For the Declaratory Relief Class***.

Certification pursuant to Ohio Civ. R. Proc. 23(b)(2), (b)(3), and/or 23(c)(4) is proper for the Classes defined above because the maintenance of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to interpretations of uniform policy terms and obligations that would establish incompatible standards of conduct for the Defendant as the party opposing the class Furthermore, certification under Ohio Civ. R. Proc. 23(b)(2), (b)(3) and/or 23(c)(4) is proper because adjudications with respect to individual

12

Class Members would, as a practical matter, be dispositive of the interests of other Class Members not a party to the adjudication or would substantially impair or impede their abilities to protect their interests. In addition, the Defendant, as the party opposing the Classes, has acted or refused to act on grounds generally applicable to the Classes, thereby making relief appropriate with respect to the Class as a whole

51. ***Superiority and Predominance For The Restitution/Monetary Relief Sub-Class***. While Plaintiff specifically states that certification pursuant to Ohio Civ. R. Proc. 23(b)(2) is proper by itself for this entire action because monetary damages in the form of restitution is merely incidental to the declaratory and injunctive relief sought, Plaintiff alternatively alleges that certification of the Restitution/Monetary Relief Sub-Class and the Ohio State Sub-Class defined above is likewise proper under Ohio R Civ P. 23(b)(3). Specifically, common issues of fact and law as set forth above predominate over any individual issues that may exist. Furthermore, a Class Action is superior to other available methods for a fair and efficient adjudication of this controversy because joinder of all members of the class is impractical, and adjudication of this action as a Class is properly manageable, The interests of judicial economy favor adjudication of the claims alleged herein on a Class basis rather than an individual basis, especially where, as here, the amount of damages for each claim are small compared to the burden and expense that would be incurred if each claim was litigated individually.

52. Further, and in the alternative, Ohio. R. Civ. Proc. 23(c)(4) permits an action to be maintained as a class action with respect to only particular issues, and the common questions of law and fact set forth above raise issues which are appropriate for class treatment pursuant to Ohio. R. Civ. Proc. 23(c)(4).

## COUNT ONE

### *DECLARATORY JUDGMENT*

53.     Plaintiffs hereby restate the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

54.     There is a genuine dispute and actual controversy, over which this Honorable Court has jurisdiction, between Rossa, the Class Members, and Liberty concerning their respective rights, duties and obligations for which Plaintiff and the Class Members desire a declaration of rights and obligations under Liberty's Policy. Pursuant to Ohio's Declaratory Judgment statute and all other uniform state declaratory judgment statutes and laws in which Plaintiff and Class Members reside, this Honorable Court may declare the rights, obligations and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

55.     Since there is a dispute about whether or not Rossa and the Class Members have coverage under Liberty's policy for the loss sustained and to be incurred in the future, Rossa and the Class Members are entitled to declaratory relief from this Court pursuant to Ohio Civil Rule 57 and R.C. §2721.01 to 2721.15, and the uniform state declaratory judgment statutes and laws in which the Class Members reside.

56.     Rossa and the Class Members are entitled to a declaration including, but not limited to, that:

a.   Rossa and the Class Members sustained direct physical loss or damage as a result of the coronavirus pandemic;

b.   Physical loss under the policy does not require tangible physical damage;

c.   Loss of use and/or utilization of Plaintiff's and Class Members' businesses constitutes a direct physical loss under the Liberty Policy;

Electronically Filed 04/15/2020 12:28 / / CV 20 931885 / Confirmation Nbr. 1984991 / CLLMD

d.   COVID-19 is a covered cause of loss under the Policy;

e.   The losses incurred by Rossa and the Class Members as a result of the executive orders issued by the Governor of Ohio and the Governors of the States wherein the Class Members reside are covered losses under the Policy;

f.   The prohibition (and/or significant limitation) of access to Property as Ordered by the Civil Authority Orders, constitutes a prohibition to the insureds' Property(s);

g.   The Civil Authority Orders triggers coverage because the Policy does not include an exclusion for a viral pandemic;

h.   The Policy provides coverage to Plaintiff and Class Members for any current and future civil authority closures of commercial buildings due to physical loss of or damage to property from COVID-19 under the Civil Authority coverage parameters and the Policy(s) provides business income coverage in the event COVID-19 has caused a loss or damage at the insureds' Property(s) or immediate area of the insureds' Property(s);

i.   The Civil Authority Orders constitute a prohibition of access to the insureds' Property(s) by a Civil Authority as defined in the Policy(s);

j.   Liberty Mutual has not and cannot prove the application of any exclusion or limitation;

k.   Rossa and the Class Members are entitled to coverage for its Business Income loss and Extra Expense resulting from coronavirus;

15

l.   Rossa and the Class Members are entitled to coverage for loss due to the actions of Ohio's civil authorities, and the civil authorities wherein the Class Members reside;

m.  Rossa and the Class Members have coverage for any substantially similar civil authority order in the future that limits or restricts the public's access to Rossa's and Class Members' business establishments and

n.  Any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

57.    Plaintiff prays for any further relief the Court deems proper, including attorney fees, interest and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

## COUNT II

### *BREACH OF CONTRACT*

58.    Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

59.    Plaintiff and Class Members, and Liberty, entered into a valid and enforceable insurance contract.

60.    Plaintiff and Class Members gave valuable consideration in the form of premium payments in exchange for the promise of insurance coverage in the event of, among other things, loss of business income.

61.    Liberty had an affirmative duty to comply with terms and conditions of the Policy and find coverage wherever possible under the Policy and indemnify Plaintiff and the Class Members for their losses sustained and recoverable under the terms and conditions of the policy.

16

62. Plaintiff and Class Members made a claim for loss of Business Income, Extra-Expense and Civil Authority arising from the pandemic, interruption by civil authority and prohibited ingress and loss of use and/or utilization of Plaintiff's and Class Members' businesses.

63. Liberty breached the insurance contract by denying coverage for Plaintiff's and Class Members' loss, which was due to a covered and foreseeable peril not subject to any exclusion.

64. Plaintiff and Class Members complied with all of their obligations under the insurance contracts.

65. Plaintiff and Class Members have been injured and suffered financial harm as a result of Liberty's breach of the insurance contract.

66. In addition, in breaching the contract, Liberty has violated its implied duty to act in good faith and fair dealing with Plaintiff and the Class Members.

67. As a direct and proximate result of Liberty's breach of contract, Plaintiff and the Class Members have incurred substantial and ongoing monetary damages in excess of $25,000.00.

## COUNT III

### *BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)*

68. Plaintiff hereby restates the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further state as follows:

69. Ohio law recognizes the independent tort of bad faith in the context of the insured/insurer relationship.

70. Liberty's conduct has breached the implied covenant of good faith and fair dealing implicit to the policy of insurance.

71. Ohio law provides that an insurer's lack of good faith is equivalent to bad faith.

72.     Plaintiff and the Ohio Bad Faith Sub-Class Members are all insureds of Liberty in the State of Ohio.

73.     Liberty failed and refused to make an adequate investigation or any investigation regarding Plaintiffs' and Sub-Class Members' claims which, among other things, has caused a severe delay in full indemnification of Plaintiffs' and Sub-Class Members' claims, and providing all benefits that Plaintiffs and Sub-Class Members are entitled to under the policy(s), which has severely prejudiced and damaged the Plaintiff and Sub-Class Members, and has further resulted in Liberty withholding all recoverable benefits due under the Policy(s).

74.     Liberty refused and continues to refuse to give any reasonable interpretation to the provisions in the Policy(s) or any reasonable application of such provisions to Plaintiff's and Sub-Class Members' claims and has acted to protect its own financial interests therein at the expense of and detriment to Plaintiff's and Sub-Class Members' rights.

75.     Liberty fails to provide Plaintiff and Sub-Class Members any reasonable or justifiable basis for denying Plaintiff and Sub-Class Members' claims.

76.     Liberty mispresented the Policy(s) terms and conditions to Plaintiff and the Sub-Class Members including, and without limitation, attempting to use an inapplicable exclusion, i.e. the virus/bacteria exclusion in a knowingly and malicious attempt to avoid paying Plaintiff and the Sub-Class Members all benefits they are entitled to under the Policy(s).

77.     Liberty, knowing that Plaintiff and Sub-Class Members were incompetent, inexperienced and unable to act to protect their interests, that such benefits were justly due, and that such benefits were necessary to pay Plaintiff and Sub-Class Members necessities of their use of the Premises, nevertheless have deprived Plaintiff and Sub-Class Members of such benefits.

18

78.     Liberty's refusal to properly investigate, adjust, handle, process and/or pay benefits due Plaintiff and Sub-Class Members compelled Plaintiffs and Sub-Class Members to, among other things, engage counsel and to initiate litigation to recover such benefits.

79.     Plaintiff and Sub-Class Members are informed and believe and thereon allege that Liberty intends to and will continue to delay, deny, and withhold, in bad faith, benefits due Plaintiff and Sub-Class Members unless and until compelled to pay such benefits by final judgment of this Honorable Court.

80.     As a direct and proximate result of Liberty's conduct, Plaintiff and Sub-Class Members have sustained substantial compensable losses, including benefits withheld, and economic losses, such as attorney's fees, out of pocket expenses, loss of business income, personal property loss, out-of-pocket costs and expenses, diminution in value of the insurance policy, and have suffered embarrassment and humiliation and severe mental and emotional distress and discomfort, all to Plaintiff's and Sub-Class Members' detriment and damage in amounts not fully ascertained, but in excess of $25,000, and within the jurisdiction of this Honorable Court.

81.     Further, at all material times and in doing things alleged herein, Liberty acted oppressively, maliciously and with a conscious disregard of Plaintiff's and Sub-Class Members' rights, with the intention of benefitting Liberty financially and with the intention of causing or recklessly disregarding the probability of causing, injury and emotional distress to Plaintiff and Sub-Class Members, Liberty has refused and continues to refuse to pay all benefits due Plaintiff and Sub-Class Members and, further, has unjustifiably and/or intentionally failed to properly investigate, adjust, process, handle and pay Plaintiff's and Sub-Class Members' claims resulting in a significant and unjustifiable delay in resolving Plaintiff's and Sub-Class Members' claims under the terms and conditions of the Policy(s). In so doing, Liberty did vex, annoy, injure, and

harass Plaintiff and Sub-Class Members so as to justify the assessment of punitive and exemplary damages against Liberty.

**WHEREFORE,** Plaintiff respectfully requests of this Honorable Court the following relief, on behalf of themselves and all others similarly situated:

a.     An Order certifying the proposed Declaratory Relief Class herein pursuant to Ohio Civ. R. Proc. 23(B)(2), and appointing Plaintiff and its counsel of record to represent the Class(es);

b.     That the court certify the Declaratory Relief Class as a class action pursuant to Ohio Civ. R. 23(B)(2) as defined above, and, at such time thereafter as the Court deems proper, then certify the Restitution/Monetary Relief Sub-Class and the Ohio State Bad Faith Sub-Class as a class action pursuant to Ohio Civ. R. 23(B)(3) and/or 23(C)(4) as defined above; award the Class Members monetary recovery in excess of $25,000; and appoint Plaintiff and their counsel of record to represent the Class(es);

c.     In the alternative, an Order certifying the proposed Classes pursuant to Ohio Civ. R. Proc. 23(C)(4); award the Class Members monetary recovery in excess of $25,000, and appoint Plaintiff and their counsel of record to represent the Class(es);

d.     Pre-judgment and post-judgment interest;

e.     Punitive damages, costs and attorney fees where applicable and in the event the Ohio State Bad Faith Sub-Class is certified as a Class Action;

f.     Plaintiff's costs of suit, including, without limitation, its attorney's fees, expert fees, and actual incurred and costs; and

g.     Such other further relief, at law or in equity, as the Court deems just and proper.

### JURY DEMAND

Pursuant to Ohio Civil Rule 38, Plaintiff requests a jury trial of all issues alleged herein.

Respectfully submitted,

*/s/ Thomas J. Connick*
Thomas J. Connick (0070527)
CONNICK LAW, LLC
25550 Chagrin Blvd., Suite 101
Beachwood OH 44122
PH: 216-364-0512 | FX: 216-609-3446
Email: tconnick@connicklawllc.com

*Attorneys for Plaintiff*

20

| **CASE NO.**<br>CV20931885 | D1 CM | **SUMMONS NO.**<br>41629078 | Rule 4 (B) Ohio |
|---|---|---|---|

Rules of Civil
Procedure

|  |  |
|---|---|
| TORRE ROSSA, LLC | **PLAINTIFF** |
| **VS** | |
| LIBERTY MUTUAL INSURANCE | **DEFENDANT** |

# SUMMONS

LIBERTY MUTUAL INSURANCE
175 BERKLEY STREET
BOSTON MA 02116

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left).

Plaintiff's Attorney

THOMAS J CONNICK
25550 CHAGRIN BLVD SUITE 101

BEACHWOOD, OH 44122-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Case has been assigned to Judge:**

JOHN J RUSSO
**Do not contact judge. Judge's name is given for
attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| **DATE SENT**<br>Apr 16, 2020 |
|---|

By _____
Deputy

COMPLAINT FILED   04/15/2020



Date Produced: 04/27/2020

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3540 2291 93. Our records indicate that this item was delivered on 04/22/2020 at 11:39 a.m. in BOSTON, MA 02116. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

**SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20931885 | D1 CM | 41629077 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| | |
|---|---|
| TORRE ROSSA, LLC | **PLAINTIFF** |
| **VS** | |
| LIBERTY MUTUAL INSURANCE | **DEFENDANT** |

**SUMMONS**

LIBERTY MUTUAL INSURANCE
CORPORATION SERVICE COMPANY
50 WEST BROAD STREET SUITE 1330
COLUMBUS OH 43215-0000

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plantiff's Attorney

THOMAS J CONNICK
25550 CHAGRIN BLVD SUITE 101

BEACHWOOD, OH 44122-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

JOHN J RUSSO
**Do not contact judge. Judge's name is given for attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT |
|---|
| Apr 16, 2020 |

By _____
Deputy

COMPLAINT FILED    04/15/2020

CMSN130

Date Produced: 04/27/2020

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3540 2291 79. Our records indicate that this item was delivered on 04/22/2020 at 12:05 p.m. in COLUMBUS, OH 43215. The scanned image of the recipient information is provided below.

Signature of Recipient :

CSC Lawyers

Address of Recipient :

50W Bd 1330

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.